IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANTHONY PENTON,

    Plaintiff,                    No. 2:11-cv-3319 KJN P

    vs.

HUBER, et al.,                    <u>ORDER AND</u>

    Defendants.               <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

I. <u>Introduction</u>

        Plaintiff is a state prisoner, proceeding without counsel. This action proceeds on plaintiff's January 9, 2012 first amended complaint, in which plaintiff alleges he was not afforded due process when he was assigned to administrative segregation or when he was subsequently assigned to the Security Housing Unit ("SHU"), following an altercation on July 20, 2007. (Dkt. No. 5.) As set forth more fully below, the court finds that defendants' motion to dismiss should be granted in part, and denied in part.

II. <u>Background</u>

        On July 20, 2007, plaintiff was involved in an incident on the yard at California State Prison, Sacramento ("CSP-SAC"). On July 25, 2007, plaintiff received an Institutional Classification Committee ("ICC") hearing, during which he was informed that an investigation

1

was being conducted into plaintiff's involvement in the July 20, 2007 altercation in which a peace officer was battered. (Dkt. No. 5 at 11 n.1.) On August 29, 2007, a rules violation report ("RVR") was issued against plaintiff for battery on a peace officer, based on the July 20, 2007 incident. On September 5, 2007, plaintiff was served with a copy of the RVR. (Dkt. No. 5 at 12.) On September 14, 2007, the RVR was referred to the District Attorney's office for a determination whether criminal charges would be brought. (Dkt. No. 5 at 12.) Plaintiff requested postponement of the RVR hearing pending the District Attorney's decision.[1] (Id.) The District Attorney decided not to prosecute.[2]

On November 8, 2007, plaintiff was transferred from state custody to federal custody by the United States Marshal for a federal court case. (Dkt. No. 5 at 14.) Plaintiff returned to state custody on June 19, 2008. (Dkt. No. 23 at 25.) Thus, with the exception of the time plaintiff spent in federal custody, plaintiff was housed in administrative segregation from the July 20, 2007 incident, until May 30, 2009.

Plaintiff's disciplinary hearing was held on May 30, 2009.

III. Legal Standards - Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff. Jenkins

---

[1] Plaintiff states that he requested postponement at the time the matter was referred for criminal prosecution. (Dkt. No. 5 at 12.) Defendants claim that plaintiff requested postponement on September 19, 2007. (Dkt. No. 26 at 4.) Plaintiff does not dispute that he requested the postponement, and resolution of the instant motion does not turn on this precise date.

[2] Plaintiff claims the District Attorney declined to prosecute on October 9, 2007. (Dkt. No. 5 at 13.) Defendants claim that the documents provided by plaintiff in opposition to the motion demonstrate that the District Attorney's Office postponed its decision on October 10, 2007, pending review by the Supervising Deputy District Attorney, and that the final decision not to prosecute plaintiff issued on April 30, 2009. (Dkt. No. 26 at 4, citing Dkt. No. 23 at 25, 30.)

v. McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir. 1999). Still, to survive dismissal for failure to state a claim, a pro se complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Furthermore, a claim upon which the court can grant relief must have facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. Attachments to a complaint are considered to be part of the complaint for purposes of a motion to dismiss for failure to state a claim. Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir.1990).

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). In general, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). The court has an obligation to construe such pleadings liberally. Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, the court's liberal interpretation of a pro se complaint may not supply essential elements of the claim that were not pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

> In considering a Rule 12(b)(6) motion, a district court generally may not take into account material beyond the complaint. Intri-Plex Technologies, Inc. v. Crest Group, Inc., 499 F.3d 1048, 1052 (9th Cir. 2007). However, there are exceptions to the general rule. Under the "incorporation by reference" doctrine, we may consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (alteration in original) (internal quotation marks omitted); see also Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed.2d 179

(2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

Dunn v. Castro, 621 F.3d 1196, 1205 n.6 (9th Cir. 2010).

IV.  Analysis

Defendants contend that plaintiff received all the process he was due for both his assignment to administrative segregation, and the subsequent assignment to the SHU, and that the delay in plaintiff's hearing was a result of plaintiff's request to postpone the hearing until the District Attorney decided whether or not to criminally prosecute plaintiff.  Plaintiff opposes the motion, arguing that defendants failed to provide him with due process before he was placed in administrative segregation, failed to provide him with a timely hearing on the RVR, and that plaintiff did not receive due process at the hearing he did receive prior to the SHU assignment.

The Ninth Circuit has held that Title 15, California Administrative Code, sections 3335, 3336, and 3339,[3] together create a constitutionally protected liberty interest in a prisoner remaining free from arbitrary administrative segregation.  Toussaint v. McCarthy, 801 F.2d 1080, 1097-98 (9th Cir. 1986), abrogated in part on other grounds by Sandin v. Connor, 515 U.S. 472, 484 (1995) (prisoner's liberty interest protected by due process triggered by conditions demonstrating "atypical and significant hardship[s] . . . in relation to the ordinary incidents of prison life").  The Supreme Court has stated that five days is a reasonable time for the post-placement review.  See Hewitt v. Helms, 459 U.S. 460, 476 (1983), abrogated in part on other grounds by Sandin, 515 U.S. at 472.

////

---

[3] These provisions regulate the placement, retention, and release of prisoners in administrative segregation.  See 15 C.C.R. § 3335 (administrative segregation); § 3336 (segregation order); § 3339 (release and retention, providing in pertinent part that, "[r]elease from segregation status shall occur at the earliest possible time in keeping with the circumstances and reasons for the inmate's initial placement in administrative segregation").

4

The process constitutionally due to an inmate placed in segregated housing depends on whether the placement is administrative or disciplinary. Toussaint, 801 F.2d at 1099. In the administrative context, due process requires that prison officials hold an informal nonadversarial hearing within a reasonable time after the prisoner is segregated, inform the prisoner of the reasons, and allow the prisoner to present his views. Id. at 1100. In other words, the prisoner must receive some notice of the charges against him, or notice of the factual basis leading to consideration for the confinement. Saavedra v. Scribner, 482 Fed. Appx. 268 (9th Cir. June 6, 2012) (internal quotations and citations omitted). A decision to segregate an inmate for administrative reasons must be supported by "some evidence," id. at 1105-06, and periodic review is necessary to maintain the segregated confinement, id. at 1101.

On the other hand, disciplinary segregation requires that the prisoner receive advance written notice of the charges against him, a hearing at which he may call witnesses and present documentary evidence in a manner consistent with institutional security; staff assistance in preparing a defense if the prisoner is illiterate; and a written statement explaining the basis of the decision. Wolff v. McDonnell, 418 U.S. 539, 563-72 (1974); see also Superintendent v. Hill, 472 U.S. 445, 454 (1985) (due process requires that disciplinary decisions require "some evidence" of a disciplinary infraction).

        1. Initial Detention in Administrative Segregation

Plaintiff claims that the notice he received prior to his retention in administrative segregation was untimely and insufficient. Plaintiff argues that the ICC hearing was formal, rather than informal, and contends that it was adversarial in nature because plaintiff was assessed a SHU term on an earlier rules violation during the April 25, 2007 hearing. Defendants contend that plaintiff was provided more process than was due because notice was provided during the formal ICC hearing, and plaintiff was informed that an investigation was being conducted into his involvement in a battery on a peace officer. Defendants contend the hearing was timely because it was held five days after the July 20, 2007 incident, and that plaintiff was also given

written notice on September 5, 2007, when plaintiff was provided a copy of the RVR resulting from the July 20, 2007 incident.

Because plaintiff was placed in administrative segregation during investigation into the July 20, 2007 incident, the due process requirements are not as stringent as they are for his subsequent RVR hearing. Thus, prison officials were only required to hold an informal nonadversarial hearing within a reasonable time after the prisoner was segregated, inform the prisoner of the reasons, and allow the prisoner to present his views. Toussaint, 801 F.2d at 1100.

Plaintiff's amended complaint and documents supplied with his opposition demonstrate that on July 25, 2007, plaintiff was informed by prison officials, at the ICC hearing, that plaintiff would be retained in administrative segregation on July 20, 2007, while prison officials investigated plaintiff's involvement in a battery on a peace officer. (Dkt. No. 23 at 26.) Thus, the ICC hearing, as argued by defendants, actually provided plaintiff with more process than he was due, because the ICC hearing was a formal hearing. The notice was timely in that the hearing was held five days after plaintiff was retained in administrative segregation, which this court finds was reasonable. Hewitt, 459 U.S. at 476. The information presented to plaintiff at the ICC hearing was sufficient notice because it provided him with notice of the charges supporting the confinement. Indeed, plaintiff was ultimately charged with battery on a peace officer. In addition, plaintiff was provided an opportunity to present his views at the ICC hearing. The committee stated that "[b]ased upon a review of [plaintiff's] CDC 114D, Central File, case factors, and through discussion with [plaintiff], the committee elects to retain [plaintiff] in [administrative segregation] pending completion of investigation. . . ." (Dkt. No. 23 at 26.) Thus, this court finds that plaintiff received timely and sufficient notice concerning his initial detention in administrative segregation during the investigation of the July 20, 2007 incident at the July 25, 2007 ICC hearing.

Plaintiff's argument that the July 25, 2007 hearing was adversarial rather than nonadversarial is not persuasive. First, the ICC's comments begin with the statement that

plaintiff appeared that day for his initial Administrative Segregation Unit ("ASU") review. (Dkt. No. 23 at 26.) As set forth above, plaintiff was informed of the charges and provided an opportunity to present his views. In the instant context, that was the minimum due process required. Whether or not this hearing was calendared prior to the July 20, 2007 incident is of no consequence. Second, plaintiff was already housed in administrative segregation, apparently due to an earlier violation (RVR #07-03-028), and the committee simply retained plaintiff in administrative segregation. Third, although plaintiff contends that the primary focus of the ICC hearing was the SHU assessment for the earlier rules violation, the record confirms that the ICC first addressed plaintiff's retention in administrative segregation. After the ICC addressed plaintiff's retention in administrative segregation based on the July 20, 2007 incident, the ICC moved on to address plaintiff's prior violation. Just because prison officials addressed two separate issues in the same hearing does not demonstrate that the hearing on plaintiff's initial detention at issue here was adversarial in nature.

However, even assuming, arguendo, that the hearing was adversarial in nature, plaintiff was subsequently provided detailed notice of the charges and the supporting facts against him when he was provided the RVR on September 5, 2007. On September 14, 2007, the RVR was referred to the District Attorney's office for a determination whether criminal charges would be brought, and plaintiff agreed to postpone the RVR proceedings until the District Attorney decided whether or not to prosecute this action. Thus, plaintiff was not deprived of an opportunity to prepare a defense. Even if the RVR hearing was held thirty days after the initial October 9, 2007 decision not to prosecute, plaintiff would have sufficient time to prepare his defense.

Accordingly, defendants' motion to dismiss plaintiff's due process challenge to his initial retention in administrative segregation should be granted.

////

////

2. <u>Alleged Failure to Provide a Timely RVR Hearing</u>

Plaintiff alleges that defendants failed to provide him with a timely hearing on the RVR. Plaintiff concedes that he requested postponement of the disciplinary action, but contends that the District Attorney declined to prosecute plaintiff on October 9, 2007, and that defendants should have held his RVR hearing thirty days thereafter. Defendants contend that because plaintiff agreed to the postponement, documents provided by plaintiff in his opposition demonstrate that the District Attorney's Office postponed its rejection on October 10, 2007, and ultimately declined to prosecute plaintiff on April 30, 2009. Thus, defendants contend that plaintiff's May 30, 2009 RVR hearing was held within the thirty day deadline, and plaintiff's claim should be dismissed.

Title 15, Section 3316(c) provides that an inmate may request postponement of his disciplinary hearing pending the outcome of a referral to the District Attorney's Office by signing and dating the RVR form. 15 C.C.R. § 3316(c); see also Cal. Penal Code § 2932(f)(1) (prisoner may request postponement of the disciplinary proceedings pending the referral for possible prosecution).[4] A disciplinary hearing postponed under this section must be held within thirty days after written notice is received that the prosecuting authority does not intend to prosecute. 15 C.C.R. § 3316(c)(1)(C).

Here, in opposition to the motion, plaintiff produced evidence demonstrating that the Sacramento County District Attorney declined to prosecute plaintiff on October 4, 2007, noting that administrative remedies are sufficiently available. (Dkt. No. 23 at 23.) The October 4, 2007 decision bears a "received" stamp reflecting that the Investigative Services Unit ("ISU") received the decision on October 9, 2007. (<u>Id.</u>) There is no indication on the October 4, 2007

---

[4] The court agrees with defendants that California Penal Code § 2932(f)(3), governing confidential investigations, does not apply in this case because there are no facts in the amended complaint or provided by plaintiff that demonstrate that the District Attorney requested that plaintiff not be notified of the referral for prosecution; indeed, plaintiff sets forth the referral in his amended complaint (dkt. no. 5 at 12).

decision that plaintiff was given notice of the decision, or that plaintiff was served with a copy of the decision. (Id.) Plaintiff was still in state custody on October 4, 2007; he was not transferred into federal custody until November 8, 2007.

Defendants do not dispute the authenticity of the October 4, 2007 document. Rather, defendants contend that plaintiff's postponement extended beyond the October 4, 2007 decision, but cite to no legal authority for such proposition. As set forth above, Section 3316(c)(1)(c) provides that the hearing "must be held within thirty days after written notice is received that the prosecuting authority does not intent to prosecute." 15 C.C.R. § 3316(c)(1)(C). Section 3316 provides no guidance for instances where the District Attorney subsequently postpones a prior decision not to prosecute. Thus, plaintiff states a civil rights claim for violation of his due process rights because prison officials apparently received written notice of the District Attorney's decision not to prosecute on October 4, 2007, yet failed to provide the RVR hearing until April 30, 2009, over a year and a half later (574 days). The fact that plaintiff was in federal custody from November 8, 2007, to June 19, 2008, a period of 224 days, is of no consequence because plaintiff was in state custody on the date prison officials received the October 4, 2007 decision not to prosecute plaintiff.

Furthermore, defendants contend that plaintiff also produced documents demonstrating that the District Attorney ("DA") postponed the October 9, 2007 decision, and ultimately did not decline to prosecute plaintiff until April 30, 2009. (Dkt. No. 26 at 4, citing Dkt. No. 23 at 25, 30.)

Two documents are pertinent here.

1. A memorandum dated May 14, 2008, from Officer P. Craig, Investigative Services Unit, to Lt. Ramos, C Facility, which confirmed receipt of the October 9, 2007 decision not to prosecute, but goes on to state that

> [o]n October 10, 2007, the Investigative Services Unit was notified
> by the District Attorney's Office that they were going to postpone
> the rejection until the case was reviewed by Steve Secrest, the

> Supervising Deputy District Attorney. **This memo is to reiterate that this case is still pending a final decision by the Sacramento County District Attorney's Office.**

(Dkt. No. 23 at 30 (emphasis in the original).)

2. The June 25, 2008 ICC hearing report which states, in pertinent part:

> ICC notes the DA initially declined to prosecute per notification letter dated 10/9/07; however, the CSP-SAC ISU was notified by the Sacramento Co. DA that the DA's office was going to postpone the rejection until the case was reviewed by Deputy DA Secrest, the Supervising Deputy DA. ICC notes there has been no rejection or acceptance as of this date and that the case is still pending DA outcome.

(Dkt. No. 23 at 25.) Defendants do not dispute the authenticity of these documents.

First, these two documents were prepared long after the alleged October 10, 2007 decision to postpone the October 9, 2007 decision not to prosecute.

Second, neither of these two documents came from the Sacramento County District Attorney's Office. The documents do not identify how the ISU was notified on October 10, 2007, or by whom the ISU was notified, or the person in ISU who was notified. There is nothing in this record to explain what prompted the preparation of the May 14, 2008 memo. Moreover, there is no indication that plaintiff was provided any notice of the alleged October 10, 2007 postponement.

Therefore, these two documents are insufficient to disprove, without more, plaintiff's claim that the May 30, 2009 RVR hearing was untimely in the face of the District Attorney's October 9, 2007 decision not to prosecute plaintiff. Thus, defendants' motion to dismiss this claim should be denied.

3. <u>Alleged Due Process Violations - RVR Hearing</u>

Finally, plaintiff contends that the hearing officer at the RVR hearing was impartial, and that plaintiff did not receive due process at the RVR hearing prior to his placement in the SHU, because he was denied witnesses at the hearing.

////

                        a.  Impartial Hearing Officer

In response to plaintiff's claim that the RVR hearing officer was impartial, defendants argue that plaintiff did not include such an allegation in the operative complaint. Defendants are correct that plaintiff raised no claim concerning an impartial hearing officer in the amended complaint.[5]  Thus, plaintiff may not raise this claim in opposition to the motion. Schneider v. California Dept. of Corrections, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).  Rather, if plaintiff wishes to pursue this claim, he must file a motion to amend, accompanied by a proposed second amended complaint.

                        b.  Inability to Present Witnesses

In his verified opposition, plaintiff contends that the delay resulted in many of his witnesses not being available for interview or to present evidence at the hearing because they were transferred to other institutions.  (Dkt. No. 23 at 10.)  Plaintiff argues that the facts and circumstances would still be fresh on his witnesses' minds had he been provided a timely hearing.  (Id.)  Plaintiff contends the witnesses could have testified by speaker phone.  Further, plaintiff argues that three of his unavailable witnesses, inmates Riggs, Gardner, and McGraw, were key witnesses who had relevant testimony to offer, setting forth specific examples.  (Dkt. No. 23 at 11.)

Defendants argue that four of plaintiff's inmate witnesses were available and interviewed, and plaintiff did not request that any witnesses be present at the hearing.  As to the seven witnesses who were unavailable due to their transfer, defendants contend that the senior hearing officer stipulated that the seven witnesses would testify that the correctional officer started the altercation and began assaulting and spraying the inmates.

////

---

[5] In the amended complaint, plaintiff stated that defendant Simms "had a duty to provide plaintiff an impartial RVR hearing" (dkt. no. 5 at 20), but it is written in the context of plaintiff's claim as to witnesses, and does not provide defendants fair notice of a claim that the hearing officer allegedly was not impartial.

Plaintiff has the qualified right to call witnesses and present evidence. Wolff, 418 U.S. at 566 ("the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals").

The court recognizes that plaintiff has a limited due process right to call witnesses and present evidence at the disciplinary hearing, but the court finds it inappropriate to decide this issue on a motion to dismiss. The court is concerned about plaintiff's ability to call witnesses over a year and a half after the April 20, 2007 incident. Due to the lengthy delay, several of the witnesses plaintiff sought were transferred to other institutions. Without further development of the record, it is unclear what impact the delay had on plaintiff's ability to call witnesses and present documentary evidence, or on plaintiff's decision not to call witnesses at the May 30, 2009 RVR hearing. Plaintiff set forth sufficient facts to state a cognizable civil rights claim on this issue in the operative complaint (dkt. no. 5 at 19-20), and provided additional factual support in his verified opposition (dkt. no. 23 at 11.) Without benefit of the key witnesses' proposed testimony, it is unclear whether plaintiff's due process rights were violated by his inability to call them, or whether their testimony would have been duplicative of the testimony offered by the witnesses who were interviewed, or whether their testimony would have tracked the stipulated testimony offered. While defendants may be able to adduce evidence demonstrating plaintiff's ability to call witnesses was not impaired,[6] this is not an appropriate stage of the proceedings to

---

[6] See Mack v. Lamarque, No. 06-15915, 2009 WL 2013129 at *1 (9th Cir. June 16, 2009) ("The district court properly granted summary judgment on Mack's due process claim against defendant Mirich arising from Mirich's refusal to allow Mack to call two witnesses at Mack's disciplinary hearing, because Mack failed to raise a genuine issue of material fact as to whether those witnesses would have provided any additional, relevant evidence."); Palmer v. Salazar, 2011 WL 3046217 at *10 (N.D. Cal. July 25, 2011) ("While Wolff allows an inmate a limited right to call witnesses, it is illogical to argue that the right is implicated whenever a prisoner asserts that he intends to call additional witnesses to present undescribed testimony."); Ramirez v. Galaza, 2006 WL 2320572 at *6 (E.D. Cal. Aug. 10, 2006) ("While Plaintiff makes the conclusory allegation that the denial of witnesses violated his due process rights, he does not proffer what the substance of their testimony would have been or how it could have helped him. . . . Thus, Plaintiff has failed to present any facts which would raise a triable issue that he was

resolve such conflicts of fact. Thus, defendants' motion to dismiss plaintiff's due process claim as to his ability to call witnesses at the May 30, 2009 RVR hearing should be denied.

Accordingly, IT IS HEREBY ORDERED that the Clerk of the Court is directed to assign a district judge to this case; and

IT IS RECOMMENDED that:

1. Defendants' motion to dismiss (dkt. no. 18) be granted in part:

   A. Plaintiff's claim that he was denied due process prior to his placement in administrative segregation be dismissed; and

   B. Plaintiff's claim that his due process rights were violated because the hearing officer at the RVR hearing was not impartial be dismissed without prejudice.

2. As to plaintiff's remaining two claims, defendants' motion to dismiss be denied; and

3. Defendants be directed to file an answer within fourteen days from any district court order adopting the instant findings and recommendations.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The

////
////
////

---

denied the testimony of a witness who would offer relevant evidence in his favor."). Each of these cases were resolved on motions for summary judgment, not on Rule 12(b)(6) motions to dismiss.

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:   January 30, 2013

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

pent3319.mtd