1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10  ANTHONY PENTON,

11              Plaintiff,              No. 2:11-cv-3319 GEB KJN P

12       vs.

13  HUBER, et al.,                     ORDER AND AMENDED

14              Defendants.            FINDINGS AND RECOMMENDATIONS

15  _____/

16              On January 31, 2013, the undersigned issued findings and recommendations on

17  defendants' motion to dismiss.  Both sides filed objections.  Based on both parties' objections, as

18  set forth more fully below, the findings and recommendations are vacated, and amended findings

19  and recommendations are issued herewith.

20  I.  Introduction

21              Plaintiff is a state prisoner, proceeding without counsel.  This action proceeds on

22  plaintiff's January 9, 2012 verified, first amended complaint, in which plaintiff alleges he was

23  not afforded due process when he was assigned to administrative segregation or when he was

24  subsequently assigned to the Security Housing Unit ("SHU"), following an altercation on July

25  20, 2007.  (Dkt. No. 5.)  As set forth more fully below, the court finds that defendants' motion to

26  dismiss should be granted in part, and denied in part.

1    II.  Background

2            On July 20, 2007, plaintiff was involved in an incident on the yard at California

3    State Prison, Sacramento ("CSP-SAC").  On July 25, 2007, plaintiff received an Institutional

4    Classification Committee ("ICC") hearing, during which he was informed that an investigation

5    was being conducted into plaintiff's involvement in the July 20, 2007 altercation in which a

6    peace officer was battered.  (Dkt. No. 5 at 11 n.1.)  On August 29, 2007, a rules violation report

7    ("RVR") was issued against plaintiff for battery on a peace officer, based on the July 20, 2007

8    incident.  On September 5, 2007, plaintiff was served with a copy of the RVR.  (Dkt. No. 5 at

9    12.)  On September 14, 2007, the RVR was referred to the District Attorney's office for a

10   determination whether criminal charges would be brought.  (Dkt. No. 5 at 12.)  Plaintiff

11   requested postponement of the RVR hearing pending the District Attorney's decision.[1]  (Id.)  The

12   District Attorney decided not to prosecute.[2]

13           On November 8, 2007, plaintiff was transferred from state custody to federal

14   custody by the United States Marshal for a federal court case.  (Dkt. No. 5 at 14.)  Plaintiff

15   returned to state custody on June 19, 2008.  (Dkt. No. 23 at 25.)  Thus, with the exception of the

16   224 days plaintiff spent in federal custody, plaintiff was housed in administrative segregation

17   from the July 20, 2007 incident, until May 30, 2009.

18           Plaintiff's disciplinary hearing was held on May 30, 2009, and he was found

19   guilty of battery on a peace officer.  (Dkt. No. 18-1 at 4.)  Plaintiff was referred to the ICC for

20   SHU Term Assessment.  (Id., at 6.)  On June 24, 2009, plaintiff was assessed a 48 month SHU

21

22           [1] Plaintiff states that he requested postponement at the time the matter was referred for criminal prosecution.  (Dkt. No. 5 at 12.)  Defendants claim that plaintiff requested postponement
23   on September 19, 2007.  (Dkt. No. 26 at 4.)  Plaintiff does not dispute that he requested the postponement, and resolution of the instant motion does not turn on this precise date.

24           [2] Plaintiff claims the District Attorney declined to prosecute on October 9, 2007.  (Dkt. No. 5 at 13.)  Defendants claim that the documents provided by plaintiff in opposition to the
25   motion demonstrate that the District Attorney's Office postponed its decision on October 10, 2007, pending review by the Supervising Deputy District Attorney, and that the final decision not
26   to prosecute plaintiff issued on April 30, 2009.  (Dkt. No. 26 at 4, citing Dkt. No. 23 at 25, 30.)

1   term, which was applied retroactively to begin on July 20, 2007, the date of the underlying

2   incident.  (Id. at 15-16.)

3   III.  Legal Standards - Motion to Dismiss

4           Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to

5   dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

6   In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the

7   court must accept as true the allegations of the complaint in question, Erickson v. Pardus,

8   551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff.  Jenkins

9   v. McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th

10  Cir. 1999).  Still, to survive dismissal for failure to state a claim, a pro se complaint must contain

11  more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements

12  of a cause of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007).  In other

13  words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

14  statements do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  Furthermore, a

15  claim upon which the court can grant relief must have facial plausibility.  Twombly, 550 U.S. at

16  570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

17  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

18  Iqbal, 129 S. Ct. at 1949.  Attachments to a complaint are considered to be part of the complaint

19  for purposes of a motion to dismiss for failure to state a claim.  Hal Roach Studios v. Richard

20  Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

21          A motion to dismiss for failure to state a claim should not be granted unless it

22  appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which

23  would entitle him to relief.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  In general, pro

24  se pleadings are held to a less stringent standard than those drafted by lawyers.  Haines v. Kerner,

25  404 U.S. 519, 520 (1972).  The court has an obligation to construe such pleadings liberally.

26  Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).  However, the court's

liberal interpretation of a pro se complaint may not supply essential elements of the claim that

were not pled.  Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

> In considering a Rule 12(b)(6) motion, a district court generally
> may not take into account material beyond the complaint.  Intri-
> Plex Technologies, Inc. v. Crest Group, Inc., 499 F.3d 1048, 1052
> (9th Cir. 2007).  However, there are exceptions to the general rule.
> Under the "incorporation by reference" doctrine, we may consider
> "documents whose contents are alleged in a complaint and whose
> authenticity no party questions, but which are not physically
> attached to the [plaintiff's] pleading." Knievel v. ESPN, 393 F.3d
> 1068, 1076 (9th Cir. 2005) (alteration in original) (internal
> quotation marks omitted); see also Tellabs, Inc. v. Makor Issues &
> Rights, Ltd., 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed.2d 179
> (2007) ("[C]ourts must consider the complaint in its entirety, as
> well as other sources courts ordinarily examine when ruling on
> Rule 12(b)(6) motions to dismiss, in particular, documents
> incorporated into the complaint by reference, and matters of which
> a court may take judicial notice.").

Dunn v. Castro, 621 F.3d 1196, 1205 n.6 (9th Cir. 2010).

IV.  Discussion

Defendants contend that plaintiff received all the process he was due for both his

placement in administrative segregation, and the subsequent assignment to the SHU, and that the

delay in plaintiff's hearing was a result of plaintiff's request to postpone the hearing until the

District Attorney decided whether or not to criminally prosecute plaintiff, as well as 224 days in

which plaintiff was in federal custody.  Plaintiff opposes the motion, arguing that defendants

failed to provide him with due process before he was placed in administrative segregation, failed

to provide him with a timely hearing on the RVR, and that plaintiff did not receive due process at

the hearing he did receive prior to the SHU assignment.

A.  Due Process Standards

The "requirements of procedural due process apply only to the deprivation of

interests encompassed by the Fourteenth Amendment's protection of liberty and property."

Burnsworth v. Gunderson, 179 F.3d 771, 774 (9th Cir. 1999).  A prisoner possesses a liberty

interest "when a change occurs in confinement that imposes an 'atypical and significant hardship

4

1    . . . in relation to the ordinary incidents of prison life.'"  Resnick v. Hayes, 213 F.3d 443, 448

2    (9th Cir. 2000) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).

3            Placement in segregation pending investigation of disciplinary charges does not

4    implicate a protected liberty interest absent a showing that the conditions of confinement

5    constituted an "atypical and significant hardship . . . in relation to the ordinary incidents of prison

6    life."  Id. at 448-49 (quoting Sandin).  Typically, placement in administrative segregation housing

7    in and of itself does not implicate a protected liberty interest.  Serrano v. Francis, 345 F.3d 1071,

8    1078 (9th Cir. 2003).  Mere allegations by a prisoner that he was denied due process in

9    connection with the decision to administratively segregate him do not present a constitutionally

10   cognizable claim, absent a showing that the specific deprivation at play meets the "real

11   substance" test.  See e.g., May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997); Richardson v.

12   Runnels, 594 F.3d 666, 672-73 (9th Cir. 2010) (administrative segregation for two weeks in the

13   Security Housing Unit (SHU) pending a gang investigation is not deprivation of a protected

14   liberty interest); Resnick, 213 F.3d at 447-49 (prisoner's retention in SHU for seventy days

15   pending a disciplinary hearing did not give rise to a liberty interest protected by the Due Process

16   Clause).

17           When a prisoner is deprived of a State-created liberty interest of "real substance,"

18   the Due Process Clause requires that the State provide certain procedural protections.  Sandin,

19   515 U.S. at 477-87.  In Toussaint v. McCarthy, 801 F.2d 1080 (9th Cir.1986), the Ninth Circuit

20   held that §§ 3335(a), 3336, and 3339(a) of Title 15 of the California Code of Regulations, taken

21   together, created a constitutionally protected liberty interest for California prisoners to be free

22   from placement in administrative segregation.  Toussaint, at 1097-98, abrogated in part on other

23   grounds by Sandin, 515 U.S. at 484 (prisoner's liberty interest protected by due process triggered

24   by conditions demonstrating "atypical and significant hardship[s] . . . in relation to the ordinary

25   incidents of prison life").  In Madrid v. Gomez, 889 F.Supp. 1146, 1271 (N.D. Cal. 1995), the

26   district court found that § 3341.5(c) (3) created a liberty interest in release from administrative

segregation after confinement for eleven months.  Madrid, at 1271.  However, because Toussaint

and Madrid were decided before Sandin, those courts had no occasion to consider whether the

liberty interest at issue was one of "real substance."  Moreover, where the prisoner alleges

material differences between the conditions in general population and administrative segregation,

the prisoner's procedural due process claim should not be dismissed on the pleadings, but should

proceed to summary judgment.  See Jackson v. Carey, 353 F.3d 750, 755-57 (9th Cir. 2003)

(prisoner alleged sufficient facts to survive motion to dismiss); Ramirez v. Galaza, 334 F.3d 850,

861 (9th Cir. 2003).

Under the Constitution, the process due to an inmate placed in segregated housing

depends on whether the placement is administrative or disciplinary.  Toussaint, 801 F.2d at 1099.

In the administrative context, due process requires that prison officials hold an

informal nonadversarial hearing within a reasonable time after the prisoner is segregated, inform

the prisoner of the reasons, and allow the prisoner to present his views.  Id. at 1100.  In other

words, the prisoner must receive some notice of the charges against him, or notice of the factual

basis leading to consideration for the confinement.  Saavedra v. Scribner, 482 Fed. Appx. 268

(9th Cir. June 6, 2012) (internal quotations and citations omitted).  The Supreme Court has stated

that five days is a reasonable time for the post-placement review.  See Hewitt v. Helms, 459 U.S.

460, 476 (1983), abrogated in part on other grounds by Sandin, 515 U.S. at 472.  A decision to

segregate an inmate for administrative reasons must be supported by "some evidence," Toussaint,

at 1105-06, and periodic review is necessary to maintain the segregated confinement, id. at 1101.

On the other hand, disciplinary segregation requires that the prisoner receive

advance written notice of the charges against him, a hearing at which he may call witnesses and

present documentary evidence in a manner consistent with institutional security; staff assistance

in preparing a defense if the prisoner is illiterate; and a written statement explaining the basis of

////

////

1  the decision.  Wolff v. McDonnell, 418 U.S. 539, 563-72 (1974); see also Superintendent v. Hill,

2  472 U.S. 445, 454 (1985) (due process requires that disciplinary decisions require "some

3  evidence" of a disciplinary infraction).

4                  B.  Liberty Interest

5             In his amended complaint, plaintiff alleged material differences between housing

6  in the general population and administrative segregation.  (Dkt. No. 5 at 17-18 & n.4.)

7  Defendants did not move to dismiss based on plaintiff's failure to demonstrate a liberty interest.

8  Thus, the court need not address this issue at this time.  See Jackson, 353 F.3d at 755-57

9  (prisoner alleged sufficient facts to survive motion to dismiss).

10                  C.  Initial Detention in Administrative Segregation

11             Plaintiff claims that the notice he received prior to his placement in administrative

12  segregation was untimely and insufficient.  Plaintiff argues that the ICC hearing was formal,

13  rather than informal, and contends that it was adversarial in nature because plaintiff was assessed

14  a SHU term on an earlier rules violation during the April 25, 2007 hearing.  Defendants contend

15  that plaintiff was provided more process than was due because notice was provided during the

16  formal ICC hearing, and plaintiff was informed that an investigation was being conducted into

17  his involvement in a battery on a peace officer.  Defendants contend the hearing was timely

18  because it was held five days after the July 20, 2007 incident, and that plaintiff was also given

19  written notice on September 5, 2007, when plaintiff was provided a copy of the RVR resulting

20  from the July 20, 2007 incident.

21             Because plaintiff was placed in administrative segregation during investigation

22  into the July 20, 2007 incident, the due process requirements are not as stringent as they are for

23  his subsequent RVR hearing.  Thus, prison officials were only required to hold an informal

24  nonadversarial hearing within a reasonable time after the prisoner was segregated, inform the

25  prisoner of the reasons, and allow the prisoner to present his views.  Toussaint, 801 F.2d at 1100.

26  ////

1    Plaintiff's amended complaint and documents supplied with his opposition

2   demonstrate that on July 25, 2007, plaintiff was informed by prison officials, at the ICC hearing,

3   that plaintiff would be retained in administrative segregation on July 20, 2007, while prison

4   officials investigated plaintiff's involvement in a battery on a peace officer.  (Dkt. No. 23 at 26.)

5   Thus, the ICC hearing, as argued by defendants, actually provided plaintiff with more process

6   than he was due, because the ICC hearing was a formal hearing.  The notice was timely in that

7   the hearing was held five days after plaintiff was retained in administrative segregation, which

8   this court finds was reasonable.  Hewitt, 459 U.S. at 476.  The information presented to plaintiff

9   at the ICC hearing was sufficient notice because it provided him with notice of the charges

10  supporting the confinement.  Indeed, plaintiff was ultimately charged with battery on a peace

11  officer.  In addition, plaintiff was provided an opportunity to present his views at the ICC

12  hearing.  The committee stated that "[b]ased upon a review of [plaintiff's] CDC 114D, Central

13  File, case factors, and through discussion with [plaintiff], the committee elects to retain

14  [plaintiff] in [administrative segregation] pending completion of investigation. . . ."  (Dkt. No. 23

15  at 26.)  Thus, this court finds that plaintiff received timely and sufficient notice concerning his

16  initial detention in administrative segregation during the investigation of the July 20, 2007

17  incident at the July 25, 2007 ICC hearing.

18    Plaintiff's argument that the July 25, 2007 hearing was adversarial rather than

19  nonadversarial is not persuasive.  First, the ICC's comments begin with the statement that

20  plaintiff appeared that day for his initial Administrative Segregation Unit ("ASU") review.  (Dkt.

21  No. 23 at 26.)  As set forth above, plaintiff was informed of the charges and provided an

22  opportunity to present his views.  In the instant context, that was the minimum due process

23  required.  Whether or not this hearing was calendared prior to the July 20, 2007 incident is of no

24  consequence.  Second, plaintiff was already housed in administrative segregation, apparently due

25  to an earlier violation (RVR #07-03-028), and the committee simply retained plaintiff in

26  administrative segregation.  Third, although plaintiff contends that the primary focus of the ICC

1  hearing was the SHU assessment for the earlier rules violation, the record confirms that the ICC

2  first addressed plaintiff's detention in administrative segregation.  After the ICC addressed

3  plaintiff's retention in administrative segregation based on the July 20, 2007 incident, the ICC

4  moved on to address plaintiff's prior violation.  Just because prison officials addressed two

5  separate issues in the same hearing does not demonstrate that the hearing on plaintiff's initial

6  detention at issue here was adversarial in nature.

7         However, even assuming, *arguendo*, that the hearing was adversarial in nature,

8  plaintiff was subsequently provided detailed notice of the charges and the supporting facts

9  against him when he was provided the RVR on September 5, 2007.  On September 14, 2007, the

10  RVR was referred to the District Attorney's office for a determination whether criminal charges

11  would be brought, and plaintiff agreed to postpone the RVR proceedings until the District

12  Attorney decided whether or not to prosecute this action.  Thus, plaintiff was not deprived of an

13  opportunity to prepare a defense.  Even if the RVR hearing was held thirty days after the initial

14  October 9, 2007 decision not to prosecute, plaintiff would have sufficient time to prepare his

15  defense.

16         Accordingly, defendants' motion to dismiss plaintiff's due process challenge to

17  his initial placement in administrative segregation should be granted.

18         D.  Alleged Failure to Provide a Timely RVR Hearing

19         Plaintiff alleges that defendants failed to provide him with a timely hearing on the

20  RVR.  Plaintiff concedes that he requested postponement of the disciplinary action, but contends

21  that the District Attorney declined to prosecute plaintiff on October 9, 2007, and that defendants

22  should have held his RVR hearing thirty days thereafter.  Defendants contend that because

23  plaintiff agreed to the postponement, documents provided by plaintiff in his opposition

24  demonstrate that the District Attorney's Office postponed its rejection on October 10, 2007, and

25  ultimately declined to prosecute plaintiff on April 30, 2009.  Thus, defendants contend that

26  ////

1   plaintiff's May 30, 2009 RVR hearing was held within the thirty day deadline, and plaintiff's

2   claim should be dismissed.

3          The court need not address the parties' disagreement on this issue because

4   plaintiff's claim that he did not receive a timely hearing on the RVR does not state a federal due

5   process claim.  Although due process required prison officials to hold an informal hearing within

6   a reasonable time after plaintiff was initially placed in administrative segregation, there is no

7   similar requirement in the context of disciplinary segregation.  Wolff, 418 U.S. at 563-72.

8   Inmates subjected to disciplinary action are not entitled to all of the rights afforded to criminal

9   defendants.  Id. at 556, see also Hill, 472 U.S. at 455-56; United States v. Segal, 549 F.2d 1293,

10  1296-99 (9th Cir. 1977) (observing that prison disciplinary proceedings command the least

11  amount of due process along the prosecution continuum).  The Supreme Court has set out the

12  procedural due process requirements for disciplinary detention of a prisoner:  (1) written notice

13  of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the

14  time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the

15  fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of

16  the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly

17  hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner

18  where the prisoner is illiterate or the issues presented are legally complex.  Wolff, 418 U.S. at

19  556.  In addition, "the requirements of due process are satisfied if "some evidence" supports the

20  decision by the disciplinary board. . . ."  Hill, 472 U.S. 445, 454 (1985).

21          Thus, Wolff does not include a provision that disciplinary hearings must be timely

22  held,[3] and defendants are entitled to dismissal of this claim.

23          Plaintiff argues that certain prison regulations required that plaintiff be provided a

24  timely disciplinary hearing, citing, for example, California Code of Regulation. Title 15

25  _____

26          [3]  However, as addressed below, the alleged delay is relevant to plaintiff's claim that
    defendants deprived him of his right to call witnesses at the RVR hearing.

§§ 3316(c); 3316(c)(1)(c) (where inmate postpones disciplinary hearing until District Attorney decides whether to prosecute, hearing must be held thirty days after decision by District Attorney).  However, the Due Process Clause only requires that prisoners be afforded those procedures mandated by Wolff; it does not require that prisons comply with their own, more generous procedures.  Walker v. Sumner, 14 F.3d 1415, 1419-20 (9th Cir. 1994), overruled on other grounds by Sandin, 515 U.S. at 484.  Violations of state prison regulations do not rise to the level of a constitutional violation.  Sandin, 515 U.S. at 482 (finding no constitutionally protected liberty interest in prison regulations phrased in mandatory terms); Bostic v. Carlson, 884 F.2d 1267, 1270 (9th Cir. 1989) (a prison's failure to follow its own guidelines regarding hearings does not alone constitute denial of due process); Ybarra v. Bastian, 647 F.2d 891, 892 (9th Cir. 1981) (violations of prison rules or procedures alone do not state federal claims and are not cognizable under § 1983).

Thus, defendants' motion to dismiss plaintiff's due process challenge as to the timing of the RVR hearing should be granted.

E.  Alleged Due Process Violations - RVR Hearing

Finally, plaintiff contends that the hearing officer at the RVR hearing was not impartial, and that plaintiff did not receive due process at the RVR hearing prior to his placement in the SHU, because he was denied his right to call witnesses at the hearing.

1.  Impartial Hearing Officer

In the amended complaint, plaintiff stated that defendant Simms "had a duty to provide plaintiff an impartial RVR hearing."  (Dkt. No. 5 at 20.)

The disciplinary hearing must be conducted by a person or body that is "sufficiently impartial to satisfy the Due Process Clause."  Wolff, 418 U.S. at 571.  The decision rendered on a disciplinary charge must be supported by "some evidence" in the record.  Hill, 472 U.S. at 455.

////

1       In response to plaintiff's claim that the RVR hearing officer was not impartial,

2   defendants argue that plaintiff did not include such an allegation in the operative complaint.

3   Defendants are correct that plaintiff did not raise a claim alleging the hearing officer was not

4   impartial in the amended complaint.  Plaintiff's reference to an impartial RVR hearing was

5   written in the context of plaintiff's claim as to witnesses (dkt. no. 5 at 20), and did not provide

6   defendants fair notice of a claim that the hearing officer allegedly was not impartial.  Thus,

7   plaintiff may not raise this claim in opposition to the motion.  <u>Schneider v. California Dept. of</u>

8   <u>Corrections</u>, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).  Rather, if plaintiff wishes to pursue this

9   claim, he must file a motion to amend, accompanied by a proposed second amended complaint,

10   following the district court's ruling on these findings and recommendations.

11                  2.  <u>Alleged Inability to Present Witnesses</u>

12       In the amended complaint, plaintiff avers that defendant Simms "denied plaintiff's

13   request for witnesses because the witnesses were no longer available at the institution."  (Dkt.

14   No. 5 at 19.)  In his verified objections, plaintiff reiterated his claim that plaintiff "did request the

15   presence of witnesses, however, the investigative employee. . . told plaintiff that because of

16   safety and security reasons, plaintiff's requested witnesses could only be made available by

17   speaker phone."  (Dkt. No. 30 at 5.)  However, none of these witnesses were present by speaker

18   phone at the hearing.  (<u>Id.</u>)  Plaintiff argues that the CDCR Operations Manual § 52080.5.4.1[4]

19   _____

20           [4]  Section 52080.5.4.1 provides:

21           An inmate witness shall not be transferred between facilities to
            testify at disciplinary hearings unless the CDO of the facility
22           hearing the charges determines a fair and impartial hearing cannot
            be conducted without the presence of the inmate's witness. When
23           an inmate is not available because of transfer, the CDO of the
            institution where an inmate witness is located shall be notified of
24           the need to appoint an investigative employee to discuss the case
            with the investigative employee of the institution conducting the
25           hearing, to interview the witness, to prepare a written investigative
            report, and to forward the report to the institution where the
26           hearing will be conducted.

<u>Id.</u>

provided a procedure for the IE to obtain witness statements from transferred inmates.  (Dkt. No. 30 at 4-5.)

In his verified opposition, plaintiff contends that the delay resulted in many of his witnesses not being available for interview or to present evidence at the hearing because they were transferred to other institutions.  (Dkt. No. 23 at 10.)  Plaintiff argues that the facts and circumstances would still be fresh on his witnesses' minds had he been provided a timely hearing.  (Id.)  Plaintiff contends the unavailable witnesses could have testified by speaker phone. Further, plaintiff argues that three of his unavailable witnesses, inmates Riggs, Gardner, and McGraw, were key witnesses who had relevant testimony to offer.  (Dkt. No. 23 at 11.)

Plaintiff argues that a reasonable jury could conclude that inmates Riggs, Gardner, and McGraw were also charged with the alleged misconduct, and plaintiff would inquire what these inmates were charged with, what role defendants alleged plaintiff played in the alleged misconduct of these three inmates, and what role, if any, defendants alleged these inmates played or contributed to, in the alleged misconduct charged against plaintiff.  (Id.)  Plaintiff contends that because of their close involvement with the alleged misconduct at issue in the RVR, these inmates had the most information to contribute as witnesses for plaintiff.  Plaintiff argues that any of these inmates could have been charged with the same charge levied against plaintiff, or might have confessed to having been the actual prisoner who assaulted the correctional officer. (Dkt. No. 23 at 12.)  Plaintiff contends that defendants "substantially prejudiced" plaintiff's ability to present evidence establishing plaintiff's actual innocence of the allegedly false charges. (Id.)

In addition, plaintiff contends that the delay resulted in one witness having no memory of the incident, thus making no statement.  (Dkt. No. 30 at 4, citing Dkt. No. 18-1 at 12.)

Defendants argue that four of plaintiff's inmate witnesses were available and interviewed, and plaintiff did not request that any witnesses be present at the hearing, as noted on the Investigative Employee Report.  (Dkt. No. 18-1 at 12.)  As to the seven witnesses who were

13

1  unavailable due to their transfer, defendants contend that the senior hearing officer stipulated that

2  the seven witnesses would testify that the correctional officer started the altercation and began

3  assaulting and spraying the inmates.  In their objections, defendants contend that this stipulated

4  testimony was substantially similar to the testimony that the unavailable witnesses would have

5  offered.  (Dkt. No. 29 at 5.)  Defendants argue that excluding the testimony of the unavailable

6  witnesses was not a violation of due process, and was authorized by prison regulations, <u>citing</u>

7  <u>Davies v. Valdes</u>, 462 F.Supp. 2d 1084, 1092 (C.D. Cal. 2006); Cal. Code Regs., tit. 15,

8  § 3315(e)(1)(2) (exclusion because the witness is unavailable or does not have any additional

9  information).  (Dkt. No. 29 at 6.)

10          a.  <u>Standards</u>

11          An inmate has a right to a hearing at which he may "call witnesses and present

12  documentary evidence in his defense when permitting him to do so will not be unduly hazardous

13  to institutional safety or correctional goals."  <u>Id.</u>, at 566; <u>see also</u> <u>Ponte v. Real</u>, 471 U.S. 491,

14  495 (1985) (same).  The right to call witnesses is subject to the "mutual accommodation between

15  institutional needs and objectives and the provisions of the Constitution."  <u>Baxter v. Palmigiano</u>,

16  425 U.S. 308, 321 (1976) (citing <u>Wolff</u>, 418 U.S. at 556); <u>see also</u> <u>Serrano</u>, 345 F.3d at 1077);

17  <u>Bostic</u>, 884 F.2d at 1271.  "Prison officials must have the necessary discretion to keep the

18  hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal

19  or undermine authority, as well as to limit access to other inmates to collect statements or to

20  compile other documentary evidence."  <u>Wolff</u>, 418 U.S. at 566.  Prison officials may, but are not

21  required to, explain their reasons limiting an inmate's efforts to defend himself.  <u>Ponte</u>, 471 U.S.

22  at 497.  Should prison officials refuse to call a witness, they should explain their reasons in

23  disciplinary proceedings or later in court proceedings.  <u>Id.</u>; <u>see also</u> <u>Bostic</u>, 884 F.2d at 1274

24  (burden is on prison officials to provide justifications for refusal).  So long as those reasons "are

25  logically related to preventing undue hazards to 'institutional safety or correctional goals,' the

26  explanation should meet the due process requirements as outlined in <u>Wolff</u>."  <u>Ponte</u>, 471 U.S. at

497.  However, as a general rule, inmates "have no constitutional right to confront and

cross-examine adverse witnesses" in prison disciplinary hearings.  Id. at 510 (Marshall, J.,

dissenting).  See also Baxter, 425 U.S. at 322-23.

### b.  Failure to Interview Unavailable Witnesses

To the extent plaintiff contends that the IE failed to interview witnesses no longer

held at CSP-SAC, plaintiff's claim fails.  As noted above, plaintiff was only entitled to the

assistance of an IE if he was illiterate, and the RVR notes that plaintiff is literate.  (Dkt. No. 18-1

at 4.)  Thus, plaintiff had no due process right to the assistance of an IE in interviewing the

unavailable witnesses.  Wolff, 418 U.S. at 566; Wilson v. Johnson, 2012 WL 3689566 (C.D. Cal.

May 31, 2012) (inmate not entitled to aid of IE to find and interview witnesses).

### c.  Alleged False Charges

To the extent plaintiff argues that his due process rights were violated because the

charges against him were false, such claim is also unavailing.  The Due Process Clause itself

does not contain any language that grants a broad right to be free from allegedly false

accusations.  Freeman v. Rideout, 808 F.2d 949, 951 (2nd Cir. 1986).  Rather, the Fourteenth

Amendment provides that a prisoner "has a right not to be deprived of a protected liberty interest

without due process of law."  Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989).  Thus, as

long as a prisoner receives proper procedural due process, a claim based on the falsity of

disciplinary charges, standing alone, does not state a constitutional claim.  Id.; Freeman, 808 F.2d

at 951.

### d.  Alleged Waiver

In their objections, defendants claim that plaintiff waived his right to call

witnesses at the RVR hearing based on his failure to call witnesses at the hearing.  (Dkt. No. 29

at 5.)

> An inmate may waive his right to request witness testimony at a
> disciplinary hearing.  Such a waiver need not be in writing to
> satisfy constitutional due process standards, and the waiver may be

1    implicit rather than explicit.  See Bedoya v. Coughlin, 91 F.3d 349,
2    352 (2d Cir. 1996) (stating that "an inmate's silence can constitute
     a waiver of his due process right to request witness testimony at a
     disciplinary hearing," and holding that the inmate waived his right
3    to call a witness "by failing either to reiterate his request for [the
     witness's] testimony when given the opportunity or to object to the
4    close of the hearing"); McCann v. Coughlin, 698 F.2d 112, 123 (2d
     Cir. 1983) (reversing the district court's factual finding that an
5    inmate waived his right to call witnesses at a disciplinary hearing
     by failing to request a witness where the "overwhelming and
6    uncontradicted evidence" was that inmates at that facility had never
     been allowed to call witnesses); see also Ivy v. Moore, 31 F.3d
7    634, 638 (8th Cir. 1994) (Heaney, J., dissenting) (noting that there
     was no indication in the record that the inmate waived his right to
8    have requested witnesses testify at his prison disciplinary hearing);
     cf. Walker [v. Sumner, 14 F.3d 1415,] 1420-1421 [(9th Cir. 1994)]
9    (reversing grant of summary judgment in favor of prison officials
     under Wolff where prison rules required an inmate's signed, written
10   waiver of the right to appear at a disciplinary hearing, and the
     absence of such a written waiver created an inference that the
11   inmate did not waive his right to be present).

12   Barboza v. Kelsey, 2008 WL 2512785, *10 (C.D. Cal. 2008) (prisoner's claim that he did not

13   waive his right to present witness testimony, and that the defendant was wrong in reporting that

14   plaintiff said he was satisfied with the IE's report, and did not require oral testimony by the

15   officer witnesses the prisoner previously requested, constituted factual allegations that must be

16   credited on a motion to dismiss).

17          The documentary evidence provided by plaintiff reflects the following:

18          Defendant Simms was the hearing officer, and Correctional Officer B. Hampton

19   was the assigned Investigative Employee ("IE").  The Investigative Employee portion of the

20   RVR provided:  "During the hearing [plaintiff] stated he was not satisfied with the completed

21   copy of the IE Report due to eight inmate witnesses were not interviewed based on they had been

22   transferred."  (Dkt. No. 18-1 at 4.)  In the request for witness portion, the report stated:

23          [Plaintiff] requested the Investigative Employee (IE) to interview
            eleven inmates as witnesses.  The IE interviewed four of the inmate
24          witnesses.  Young (K-38719), English (K-62743), Caesar (C-
            14920), and Towns (V-35560).  The remaining seven inmate
25          witnesses were not available due to being transferred and they were
            Cornelius (T-67367), R. Gardner (P-37910), McGraw (T-36813),
26          Moore (C077603), Morgan (H-44786), Riggs (E-57337), and

1  Cunningham (E-51571).  The SHO stipulated that the remaining
   seven inmate witnesses would testify that the Officer started the
2  incident and began assaulting inmates with pepper spray and
   batons.  [Plaintiff] did not request any witnesses to be present at
3  the hearing.

4  (Dkt. No. 18-1 at 4.)

5  Plaintiff's May 14, 2009 handwritten statement was incorporated verbatim, and

6  stated:

7  1)  [Plaintiff] submits that each of his witnesses will testify that
   while he was in the immediate vicinity of the unfolding incident,
8  he was inadvertently hit with O.C. pepper spray, and in his attempt
   to get out of the way he was subsequently struck over the head by
9  C/O Wuest. . . for this reason [plaintiff] requests the following
   inmates as witnesses:
10
   1) D. Caesar C-14920
11 2) V. Cornelius T-67367
   3) E. Cunningham E-51571
12 4) E. English K-62743
   5) R. Gardner P-37910
13 6) T. McGraw T-36813
   7) K. Moore C077603
14 8) K. Morgan H-44786
   9) F. Riggs E-57337
15 10) K. Towns V-35560
   11) J. Young K-38719
16
   These inmates will also testify that it was Correctional Staff who
17 started the incident and began assaulting inmates.

18 (Dkt. No. 18-1 at 10.)  The IE took the statement of the reporting employee, and interviewed five

19 staff witnesses, and four inmate witnesses requested by plaintiff.  (Id. at 11-12.)  At the end of the

20 IE report, the IE noted:

21 [Plaintiff] submitted a list requests [sic] and inmate witnesses:  D.
   Caesar (C-14920), V. Cornelius (T-67367), E. Cunningham (E-
22 51571), E. English (K-62743), R. Gardner (P-37910), T. McGraw
   (T-36813), K. Moore (C077603), K. Morgan (H-44786), F. Riggs
23 (E-57337), K. Towns (V-35560), and J. Young (K-38719).
   However, Inmate [sic] Cornelius, Gardner, McGraw, Moore,
24 Morgan and Riggs all transferred to other institutions and were not
   available to be interviewed.  [Plaintiff] did not request for the I.E.
25 to interview any other witnesses, staff or inmate.

26 Reporting Employee requested at hearing:  --------------- No.

17

1    Staff Witnesses requested at hearing:-----------------------None.

2    Inmate Witnesses requested at hearing: ---------------------None.

3    Investigative Employee requested at hearing:--------------No.

4    . . . .

5    (Dkt. No. 18-1 at 12.)

6    Thus, the RVR reflects that plaintiff was present at the hearing, was provided an

7    opportunity to be heard, and objected to the IE report because "eight inmate witnesses were not

8    interviewed." (Dkt. No. 18-1 at 4.) But the RVR does not indicate that plaintiff objected that

9    these witnesses did not appear by speaker phone, or to the IE's note that no inmate witnesses had

10   been requested to appear at the hearing.

11   However, in his verified objections, plaintiff reiterated his claim that plaintiff "did

12   request the presence of witnesses, however, the investigative employee. . . told plaintiff that

13   because of safety and security reasons, plaintiff's requested witnesses could only be made

14   available by speaker phone." (Dkt. No. 30 at 5.) Moreover, in the verified amended complaint,

15   plaintiff states that defendant Simms "denied plaintiff's request for witnesses because the

16   witnesses were no longer available at the institution." (Dkt. No. 5 at 19.)

17   The documentary evidence also includes ambiguous language. Although the IE

18   characterized plaintiff's request as a request to interview witnesses, in plaintiff's handwritten

19   report, he described the testimony his witnesses would provide, and then stated, "for this reason

20   [plaintiff] requests the following inmates as witnesses." (Dkt. No. 18-1 at 9-10.) Because the

21   documentary evidence is ambiguous, and plaintiff alleges facts that must be credited on a motion

22   to dismiss, Barboza, 2008 WL 2512785 at *11, the court finds that defendants' motion to find

23   plaintiff waived his right to call witnesses should be denied without prejudice. While defendants

24   may be able to adduce evidence demonstrating that plaintiff waived his right, either through

25   discovery or on a motion for summary judgment, on the instant record the court cannot find

26   plaintiff waived his right to call witnesses.

1          e.  <u>Alleged Inability to Present Witnesses</u>

2          In his verified opposition, plaintiff contends that the delay resulted in many of his

3   witnesses not being available for interview or to present evidence at the hearing because they

4   were transferred to other institutions.  (Dkt. No. 23 at 10.)  Plaintiff argues that the facts and

5   circumstances would still be fresh on his witnesses' minds had he been provided a timely

6   hearing.  (<u>Id.</u>)  Plaintiff contends the unavailable witnesses could have testified by speaker phone.

7   Further, plaintiff argues that three of his unavailable witnesses, inmates Riggs, Gardner, and

8   McGraw, were key witnesses who had relevant testimony to offer, setting forth specific

9   examples.  (Dkt. No. 23 at 11.)

10          Defendants argue that four of plaintiff's inmate witnesses were available and

11   interviewed, and plaintiff did not request that any witnesses be present at the hearing.  As to the

12   seven witnesses who were unavailable due to their transfer, defendants contend that the senior

13   hearing officer stipulated that the seven witnesses would testify that the correctional officer

14   started the altercation and began assaulting and spraying the inmates.

15          As set forth above, plaintiff has the qualified right to call witnesses and present

16   evidence.  <u>Wolff</u>, 418 U.S. at 566 ("the inmate facing disciplinary proceedings should be allowed

17   to call witnesses and present documentary evidence in his defense when permitting him to do so

18   will not be unduly hazardous to institutional safety or correctional goals").

19          The court recognizes that plaintiff has a limited due process right to call witnesses

20   and present evidence at the disciplinary hearing, but the court finds it inappropriate to decide this

21   issue on a motion to dismiss.  First, as set forth above, there is a material dispute of fact as to

22   whether plaintiff failed to call witnesses at the hearing.  Second, the court is concerned about

23   plaintiff's ability to call witnesses over a year and a half after the April 20, 2007 incident.  Due to

24   the lengthy delay, several of the witnesses plaintiff sought were transferred to other institutions.

25   Without further development of the record, it is unclear what impact the delay had on plaintiff's

26   ability to call witnesses and present documentary evidence, or on plaintiff's decisions relevant to

1    calling witnesses at the May 30, 2009 RVR hearing.  Plaintiff set forth sufficient facts to state a

2    cognizable civil rights claim on this issue in the operative complaint (dkt. no. 5 at 19-20), and

3    provided additional factual support in his verified opposition (dkt. no. 23 at 11.)  Without benefit

4    of the allegedly key witnesses' proposed testimony, it is unclear whether plaintiff's due process

5    rights were violated by his inability to call them, or whether their testimony would have been

6    duplicative of the testimony offered by the witnesses who were interviewed, or whether their

7    testimony would have tracked the stipulated testimony offered.  In their objections, defendants

8    contend that the witness testimony as described by plaintiff was "substantially similar" to the

9    testimony provided by other witnesses, and to the testimony offered by stipulation by the hearing

10   officer.  However, analyzing the testimony of the unavailable witnesses as compared with other

11   witness testimony involves resolution of disputes of fact not appropriate on a motion to dismiss.

12   While defendants may be able to adduce evidence demonstrating plaintiff's ability to call

13   witnesses was not impaired,[5] this is not an appropriate stage of the proceedings to resolve such

14   conflicts of fact.  Thus, defendants' motion to dismiss plaintiff's due process claim as to his

15   ability to call witnesses at the May 30, 2009 RVR hearing should be denied.

16   ////

17   ////

18

19        [5]  See Mack v. Lamarque, No. 06-15915, 2009 WL 2013129 at *1 (9th Cir. June 16,
     2009) ("The district court properly granted summary judgment on Mack's due process claim
20   against defendant Mirich arising from Mirich's refusal to allow Mack to call two witnesses at
     Mack's disciplinary hearing, because Mack failed to raise a genuine issue of material fact as to
21   whether those witnesses would have provided any additional, relevant evidence."); Palmer v.
     Salazar, 2011 WL 3046217 at *10 (N.D. Cal. July 25, 2011) ("While Wolff allows an inmate a
22   limited right to call witnesses, it is illogical to argue that the right is implicated whenever a
     prisoner asserts that he intends to call additional witnesses to present undescribed testimony.");
23   Ramirez v. Galaza, 2006 WL 2320572 at *6 (E.D. Cal. Aug. 10, 2006) ("While Plaintiff makes
     the conclusory allegation that the denial of witnesses violated his due process rights, he does not
24   proffer what the substance of their testimony would have been or how it could have helped him. .
     . .  Thus, Plaintiff has failed to present any facts which would raise a triable issue that he was
25   denied the testimony of a witness who would offer relevant evidence in his favor.").  Each of
     these cases were resolved on motions for summary judgment, not on Rule 12(b)(6) motions to
26   dismiss.

V.  <u>Conclusion</u>

Accordingly, IT IS HEREBY ORDERED that the January 31, 2013 findings and recommendations (dkt. no. 28) are vacated; and

IT IS RECOMMENDED that:

1.  Defendants' motion to dismiss (dkt. no. 18) be granted in part:

a.  Plaintiff's claim that he was denied due process prior to his initial placement in administrative segregation be dismissed;

b.  Plaintiff's claim that his due process rights were violated based on the untimely RVR hearing be dismissed; and

c.  Plaintiff's claim that his due process rights were violated because the hearing officer at the RVR hearing was not impartial be dismissed without prejudice;

2.  As to plaintiff's claim that his due process rights were violated because plaintiff was unable to call witnesses at the RVR hearing, defendants' motion to dismiss be denied;

3.  If he desires to do so, plaintiff be directed to file a motion to amend, accompanied by a second amended complaint,[6] within thirty days from any district court order adopting the instant findings and recommendations; and

4.  Defendants' obligation to answer claims not dismissed by the district court be suspended pending resolution of plaintiff's motion to amend.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written

---

[6]  Plaintiff is not required to seek leave to amend.  However, if plaintiff seeks leave to amend, he should only include his claim that the hearing officer was impartial, and any claims not dismissed by the district court.  If plaintiff fails to timely file a motion to amend, accompanied by a proposed second amended complaint, this action will proceed on plaintiff's amended complaint as to those claims not dismissed by the district court.

objections with the court and serve a copy on all parties.  Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

objections shall be filed and served within fourteen days after service of the objections.  The

parties are advised that failure to file objections within the specified time may waive the right to

appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  March 18, 2013


_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

pent3319.mtd2

22