1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ANTHONY PENTON,                              No.  2:11-cv-3319 TLN KJN P

12              Plaintiff,

13        v.                                       FINDINGS AND RECOMMENDATIONS

14   SIMS,

15              Defendant.

16

17   I.  Introduction

18        Plaintiff is a state prisoner proceeding without counsel.  Pursuant to the district court's

19   order filed May 31, 2013, this action is proceeding solely as to plaintiff's claim in his first

20   amended complaint that his due process rights were violated by defendant Sims because plaintiff

21   was unable to call witnesses at the May 30, 2009 rules violation report ("RVR") hearing.  (ECF

22   No. 39.)  Defendant's motion for summary judgment on the issue of exhaustion of administrative

23   remedies is before the court.  Plaintiff filed an opposition; defendant filed a reply.  As set forth

24   more fully below, the undersigned finds that defendant's motion for summary judgment on

25   plaintiff's sole remaining claim should be granted.

26   II.  Defendant's Motion for Summary Judgment

27        Defendant moves for summary judgment on the grounds that plaintiff failed to exhaust his

28   administrative remedies prior to filing the instant action.

                                                    1

1        A.  Exhaustion of Administrative Remedies

2            The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be

3    brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a

4    prisoner confined in any jail, prison, or other correctional facility until such administrative

5    remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion

6    requirement applies to all inmate suits about prison life, whether they involve general

7    circumstances or particular episodes, and whether they allege excessive force or some other

8    wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).

9            Proper exhaustion of available remedies is mandatory, Booth v. Churner, 532 U.S. 731,

10   741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other

11   critical procedural rules[.]"  Woodford v. Ngo, 548 U.S. 81, 90 (2006).  The Supreme Court has

12   also cautioned against reading futility or other exceptions into the statutory exhaustion

13   requirement.  See Booth, 532 U.S. at 741 n.6.  Moreover, because proper exhaustion is necessary,

14   a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise

15   procedurally defective administrative grievance or appeal.  See Woodford, 548 U.S. at 90-93.

16   "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative

17   review process in accordance with the applicable procedural rules,' [] - rules that are defined not

18   by the PLRA, but by the prison grievance process itself."  Jones v. Bock, 549 U.S. 199, 218

19   (2007) (quoting Woodford, 548 U.S. at 88).  See also Marella v. Terhune, 568 F.3d 1024, 1027

20   (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper

21   exhaustion.'") (quoting Jones, 549 U.S. at 218).

22           In California, prisoners may appeal "any policy, decision, action, condition, or omission

23   by the department or its staff that the inmate or parolee can demonstrate as having a material

24   adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).

25   Most appeals progress through three levels of review.  See id. § 3084.7.  The third level of review

26   constitutes the decision of the Secretary of the California Department of Corrections and

27   Rehabilitation and exhausts a prisoner's administrative remedies.  See id. § 3084.7(d)(3).  A

28   California prisoner is required to submit an inmate appeal at the appropriate level and proceed to

                                              2

1   the highest level of review available to him.  Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir.

2   2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002).

3         Failure to exhaust is "an affirmative defense the defendant must plead and prove."  Bock,

4   549 U.S. at 204, 216.  In Albino, the Ninth Circuit agreed with the underlying panel's decision[1]

5   "that the burdens outlined in Hilao [v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996),]

6   should provide the template for the burdens here."  Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir.

7   2014) (en banc).  A defendant need only show "that there was an available administrative remedy,

8   and that the prisoner did not exhaust that available remedy."  Albino, 747 F.3d at 1172.  Once the

9   defense meets its burden, the burden shifts to the plaintiff to show that the administrative

10  remedies were unavailable.  See Albino, 697 F.3d at 1030-31.

11        A prisoner may be excused from complying with the PLRA's exhaustion requirement if

12  he establishes that the existing administrative remedies were effectively unavailable to him.  See

13  Albino, 747 F.3d at 1172-73.  The PLRA requires that an inmate exhaust only those

14  administrative remedies "as are available."  42 U.S.C. § 1997e(a).  For a remedy to be available,

15  there must be the "possibility of some relief . . . ."  Booth, 532 U.S. at 738.  A remedy is available

16  to inmates when it is "capable of use; at hand."  Albino, 747 F.3d at 1171, quoting Brown v.

17  Valoff, 422 F.3d 926, 937 (9th Cir. 2006).  For example, where prison officials improperly screen

18  out inmate grievances, they render administrative remedies effectively unavailable.  Sapp v.

19  Kimbrell, 623 F.3d 813, 823, 824 (9th Cir. 2010) (To demonstrate such an exception, "the inmate

20  must establish (1) that he actually filed a grievance or grievances that, if pursued through all

21  levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue

22  in federal court, and (2) that prison officials screened his grievance or grievances for reasons

23  inconsistent with or unsupported by applicable regulations.").  See also Nunez v. Duncan, 591

24  F.3d 1217, 1226 (9th Cir. 2010) (excusing an inmate's failure to exhaust because he was

25  precluded from exhausting administrative remedies by a warden's mistaken instruction to him

26  _____

27  [1]  See Albino v. Baca, 697 F.3d 1023, 1031 (9th Cir. 2012).  The three judge panel noted that "[a]
    defendant's burden of establishing an inmate's failure to exhaust is very low."  Id. at 1031.

28  Relevant evidence includes statutes, regulations, and other official directives that explain the
    scope of the administrative review process.  Id. at 1032.

1   that a particular unavailable document was needed for him to pursue his inmate appeal); Marella,

2   568 F.3d at 1024 (excusing an inmate's failure to exhaust because he did not have access to the

3   necessary grievance forms to timely file his grievance).  Plaintiff bears the burden of

4   demonstrating that the administrative remedies were rendered unavailable to him through no fault

5   of his own.  Sapp, 623 F.3d at 822-23; Nunez, 592 F.3d at 1224; Brown, 422 F.3d at 939-40.

6          Where a prison system's grievance procedures do not specify the requisite level of detail

7   for inmate appeals, Sapp, 623 F.3d at 824, a grievance satisfies the administrative exhaustion

8   requirement if it "alerts the prison to the nature of the wrong for which redress is sought."  Griffin

9   v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009).  In California, "regulations require only that an

10  inmate 'describe the problem and the action requested.'"  Sapp, 623 F.3d at 824, quoting Cal.

11  Code Regs. tit. 15, § 3084.2(a).)  "A grievance need not include legal terminology or legal

12  theories unless they are in some way needed to provide notice of the harm being grieved.  A

13  grievance also need not contain every fact necessary to prove each element of an eventual legal

14  claim.  The primary purpose of a grievance is to alert the prison to a problem and facilitate its

15  resolution, not to lay groundwork for litigation."  Griffin, 557 F.3d at 1120.

16         If under the Rule 56 summary judgment standard, the court concludes that plaintiff has

17  failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice.

18  Wyatt v. Terhune, 315 F.3d 1108, 1120, overruled on other grounds by Albino, 747 F.3d 1162.

19         B.  Legal Standard for Summary Judgment

20         Summary judgment is appropriate when it is demonstrated that the standard set forth in

21  Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if the

22  movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

23  judgment as a matter of law."  Fed. R. Civ. P. 56(a).[2]

24                 Under  summary  judgment  practice,  the  moving  party  always
                   bears the initial responsibility of informing the district court of the

25  ////

26  ////

27  [2]  Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10, 2010.
    However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he
28  standard for granting summary judgment remains unchanged."

1

2
3
4

> basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

5   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

6   56(c)).  "Where the nonmoving party bears the burden of proof at trial, the moving party need

7   only prove that there is an absence of evidence to support the non-moving party's case."  Nursing

8   Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376,

9   387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325; see also Fed. R. Civ. P. 56 advisory

10  committee's notes to 2010 amendments (recognizing that "a party who does not have the trial

11  burden of production may rely on a showing that a party who does have the trial burden cannot

12  produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment

13  should be entered, after adequate time for discovery and upon motion, against a party who fails to

14  make a showing sufficient to establish the existence of an element essential to that party's case,

15  and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.

16  "[A] complete failure of proof concerning an essential element of the nonmoving party's case

17  necessarily renders all other facts immaterial."  Id. at 323.

18      Consequently, if the moving party meets its initial responsibility, the burden then shifts to

19  the opposing party to establish that a genuine issue as to any material fact actually exists.  See

20  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

21  establish the existence of such a factual dispute, the opposing party may not rely upon the

22  allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

23  form of affidavits, and/or admissible discovery material in support of its contention that such a

24  dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party

25  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

26  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

27  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

28  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return

1   a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

2   (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d

3   1564, 1575 (9th Cir. 1990).

4          In the endeavor to establish the existence of a factual dispute, the opposing party need not

5   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

6   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

7   trial." T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce

8   the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

9   Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

10  amendments).

11         In resolving a summary judgment motion, the court examines the pleadings, depositions,

12  answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.

13  Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at

14  255.  All reasonable inferences that may be drawn from the facts placed before the court must be

15  drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences

16  are not drawn out of the air, and it is the opposing party's obligation to produce a factual

17  predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F.

18  Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

19  demonstrate a genuine issue, the opposing party "must do more than simply show that there is

20  some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could

21  not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

22  trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

23         By contemporaneous notice provided on May 15, 2014, (ECF No. 59), plaintiff was

24  advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal

25  Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc);

26  Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

27  ////

28  ////

C. Facts[3]

1.  Plaintiff is an inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR").

2.  At times relevant to the lawsuit, plaintiff was incarcerated at California State Prison, Sacramento ("CSP-SAC") in Represa, California.

3.  Plaintiff was issued a Rules Violation Report ("RVR"), Log No. SAC-C-07-08-082 on September 5, 2007, for battery on a peace officer that occurred on July 20, 2007.  (ECF. No. 5 at ¶ 24.)

4.  On May 30, 2009, defendant Sims conducted the hearing for plaintiff's RVR.  (ECF No. 5 at ¶ 40.)

5.  Plaintiff alleges that defendant Sims denied plaintiff's requests for witnesses at the RVR hearing and stated the witnesses were no longer available.  (ECF No. 5 at ¶¶ 40-41.)

6.  At the time plaintiff was incarcerated at CSP-Sac, CSP-Sac provided an administrative exhaustion procedure for inmates that included an informal level, first formal level, and second level.  (ECF No. 59-4 at ¶¶ 7, 9.)

7.  At the Office of Appeals, formerly the Inmate Appeals Branch, there was a third formal level (Director's level).  (ECF No. 59-5 at ¶ 14.)

8.  To properly exhaust administrative remedies through the CSP-Sac procedure, an inmate pursued their grievance issues through all levels of the administrative exhaustion procedure, unless the inmate was excused from one of the levels under CDCR's administrative exhaustion procedures.  (ECF Nos. 59-4 at ¶¶ 6-7; 59-5 at ¶¶ 7-8.)

9.  Plaintiff first raised his claim that defendant Sims denied him his witnesses in his January 9, 2012 amended complaint.  (ECF No. 5.)

////

////

---

[3]  For purposes of the instant motion for summary judgment, the court finds the following facts undisputed.  Documents submitted as exhibits are considered to the extent that they are relevant, and despite the fact that they are not authenticated because such documents could be admissible at trial if authenticated.

10.   Between May 29, 2009, and January 9, 2012, plaintiff did not submit any grievances through the institutional and third level alleging that the hearing officer for his RVR denied him the right to call witnesses at the RVR hearing.  (ECF Nos. 59-4 at ¶¶ 9-10; 59-5 at ¶¶ 10-11.)

11.   Plaintiff submitted SAC-C-09-01295 on June 26, 2009, which raised a number of issues related to his RVR hearing.  (ECF Nos. 59-4 at 3, 5-30 (Ex. A); 59-5 at 3, 6-60 (Ex. D).)

12.   In SAC-C-09-01295, plaintiff alleged that:

a.   Defendant Sims failed to provide an impartial hearing when he did not secure all the officer's reports used as evidence, including a report determining that the reports of officers Quest, Bujanda, and Zamudio were not credible, as well as the reports of officers that did not indicate plaintiff was involved in the incident (ECF No. 59-5 at 6, 8);

b.   The CDCR contacted the District Attorney's Office and asked them to postpone the decision not to prosecute the RVR which prevented plaintiff from getting his RVR hearing within 30 days of the date the DA declined to prosecute, depriving plaintiff of his due process rights (ECF No. 59-5 at 8);

c.   The failure of the hearing officer to contact the District Attorney's office to determine whether plaintiff was properly notified of the subsequent postponement denied plaintiff a fair and impartial hearing on the RVR "because not only was the reports to this incident of certain staff members questionable, where other reports may have served to mitigate the preponderance of evidence standard, but the administrative processing of the D.A. referral had also been deemed questionable where this inmate's due process rights to call witnesses and present an adequate defense attached within 30 days of the original notification" (ECF No. 59-5 at 8); and

d.   If plaintiff had "been afforded his procedural due process rights at the time of the original notification dated 10-9-07, he may have been able to not only contact and obtain statements from all of his witnesses who may have offered more information than that stipulated to by the senior hearing officer, but because of the proximity of the events, as it relates to the framing of time, he may have been able to obtain a more accurate recollection from his witnesses and therefore a more profound insight.  (See interview of inmate witnesses at page (4) of the I-E

8

1    report.)"  (ECF No. 59-5 at 9.)

2         13.  In grievance SAC-C-09-01295, plaintiff did not expressly state that Sims or anyone

3    else denied him his witnesses at the RVR hearing.  (ECF Nos. 59-4 at 3, 5-30 (Ex. A); 59-5 at 3,

4    6-60 (Ex. D).)

5         14.  The third level did receive one other grievance from plaintiff between May 29-30,

6    2009, and January 9, 2012, OOA log number 0815311 (SAC-09-00270), but that grievance was

7    submitted for the first time at the institutional level on January 4, 2009, which was before the

8    RVR hearing ever took place, and raised a staff complaint against K. Pool concerning the

9    handling of plaintiff's appeals.  (ECF No. 59-5 at 3, 65-66.)

10        15.  SAC-C-09-01295 bypassed the informal and first level, and was reviewed and

11   responded to at the second level of review.  (ECF No. 59-4 at 3, 5-30, 32-34.)

12        16.  The second level review of grievance SAC-C-09-01295 addressed the following

13   claims:  1) the SHO was not impartial; 2) the RVR hearing should have been heard within 30

14   days of the DA's original decision not to prosecute the RVR; 3) plaintiff was not provided

15   procedural due process rights prior to the subsequent postponement of the RVR; 4) "the

16   administrative processing of the DA referral was deemed questionable regarding plaintiff's due

17   process right to call witnesses and to present an adequate defense attached within 30 days of the

18   original notification . . . in order to have been able to contact and obtain statements from all of

19   [plaintiff's] witnesses, who may have offered more information than that stipulated by the SHO";

20   5) plaintiff requested, through the IE, correctional officer reports that plaintiff alleged "were

21   found to be less than credible by an Office of Internal Affairs (OIA) agent and for the SHO to

22   review the assumed reports from OIA."  (ECF No. 59-4 at 32.)  As relief, plaintiff requested that

23   the CDCR make available such reports, as well as dismissal of the charges based on "deliberate

24   violations of [plaintiff's] rights to a fair CDC-115 hearing."  (ECF No. 59-4 at 32.)

25        17.  On October 22, 2009, the second level reviewer rejected the issues raised by the

26   grievance and denied the grievance in its entirety.  (ECF No. 59-4 at 32-34.)

27        18.  When plaintiff appealed the grievance to the third level, Section H of the grievance

28   required plaintiff to "add data or reasons for requesting a Director's Level Review."  (ECF No.

1 | 59-5 at 7.)

2 |      19.  Plaintiff appealed his grievance to the third level and included a statement in Section

3 | H and a two-page attachment.  (ECF No. 59-5 at 6-7, 10-11.)

4 |      20.  In Section H, plaintiff only appealed to the third level of review the second level

5 | reviewer's decision regarding the date the DA declined to prosecute the RVR and the date when

6 | the RVR hearing should have been held.  Plaintiff did not include any issue regarding his inmate

7 | witnesses as part of his appeal to the third reviewer.  (ECF No. 59-5 at 6-7, 10-11.)

8 |      21.  The third level review decision did not address the inmate witness issue.  It only

9 | addressed the DA issue and the date the RVR hearing should have been held.  (ECF No. 59-5 at

10 | 62-63.)

11 |      22.  In section B of grievance SAC-C-09-01295, under "Action Requested," plaintiff

12 | requested that the CDCR make available to plaintiff the additional correctional officer reports

13 | requested for plaintiff's use in defending the RVR, and that the charges be dismissed based on

14 | deliberately violating plaintiff's rights to a fair RVR hearing.  (ECF No. 59-5 at 6.)

15 |      23.  In the section H statement to the third level, plaintiff requests "that the actions

16 | requested in part (B) of the instant appeal be granted."  (ECF No. 59-5 at 11.)  There is no

17 | mention of inmate witnesses in part (B).  (ECF No. 59-5 at 6.)

18 |      24.  On June 26, 2009, plaintiff filed a second appeal claiming his due process rights were

19 | deliberately violated.  (ECF No. 66 at 4-6.)  The copy of the appeal plaintiff provided includes

20 | plaintiff's allegations that defendant Sims denied plaintiff's right to call witnesses and obtain

21 | witness statements at the RVR hearing.[4]  (ECF No. 66 at 6.)

22 |      25.  On July 20, 2009, plaintiff's second appeal was screened out.  (ECF No. 66 at 7.)  The

23 | appeals coordinator checked the "other" box and noted "incomplete documents attached."  (ECF

24 | No. 66 at 7.)  The appeals coordinator also informed plaintiff he could "only file 1 non-

25 | emergency appeal per 7 days," with the handwritten note:  "6/24/09 disciplinary issue."  (ECF

26 | 

27 | [4]  Defendant objects, *inter alia*, that plaintiff's unlogged grievance is not authenticated, and argue that plaintiff's declaration is insufficient to authenticate it.  (ECF No. 68 at 4.)  It does not appear that CSP-Sac retains copies of grievances that have been screened out.

28 |

1   No. 66 at 7.)  Plaintiff does not challenge this screening as improper.

2         26.  Plaintiff resubmitted this second appeal, but on September 4, 2009, the appeals

3   coordinator screened out the re-submission, noting that "this is a duplicate appeal issue that has

4   been accepted for a 2nd level response for RVR Log #C-07-08-082."  (ECF No. 66 at 8.)[5]

5         D.  The Parties' Contentions

6         Defendant Sims argues that plaintiff failed to exhaust his claim that defendant denied his

7   right to call witnesses at the RVR hearing because he did not submit any grievances between May

8   29, 2009, and January 9, 2012, specifically alleging that the hearing officer for the RVR hearing

9   denied plaintiff the right to call witnesses.  Defendant contends that grievance SAC-C-09-01295

10  tangentially addressed the issue of witnesses, but in a different context and addressing very

11  different issues.  Defendant argues that plaintiff's claim that he would have been able to obtain

12  written statements from his witnesses if the hearing had been held sooner, is not the same claim

13  as stating he was denied a request to have his witnesses testify at the hearing.  Moreover, plaintiff

14  failed to mention the issue of inmate witnesses in the third level appeal in SAC-C-09-01295.

15  Thus, defendant argues that the Director's level review did not address the issue of inmate

16  witnesses.  Defendant contends this case is similar to Brown v. Valoff, 422 F.3d at 941-42,

17  wherein an inmate pursued both excessive force and medical claims, the court found the inmate

18  failed to exhaust because he failed to appeal his medical issues to the third level.  Defendant

19  contends that plaintiff failed to raise at the third level of appeal his claims that the hearing officer

20  was not impartial and that he was unable to get statements from his witnesses because of the

21  untimely hearing, thus rendering plaintiff's witness claims unexhausted.

22  ////

23  ////

24  ////

25  ////

26

27  _____
    [5]  Plaintiff claims he re-submitted the same appeal on September 21, 2009, along with a letter
    challenging the September 4, 2009 screening, but the appeals form provided only bears two
28  received stamps from the appeals office, not three.  (ECF No. 66 at 4.)

1    In opposition, plaintiff contends[6] that he raised his witness claims in an administrative

2    appeal signed the same day as SAC-C-09-01295, but that after plaintiff provided the appropriate

3    documents to this second appeal, appeals coordinator K. Pool improperly screened the second

4    appeal out as a duplicate of SAC-C-09-01295.  (ECF No. 62 at 3.)  Plaintiff contends that Pool

5    failed to discern the distinctions between the two appeals.  (Id.)  On September 21, 2009, plaintiff

6    states he wrote a letter to the appeals coordinator informing Pool that the issues were different,

7    and the requested relief was not the same.  (ECF No. 62 at 7.)  Plaintiff contends this improper

8    screening rendered further appeals unavailable, and left him no alternative but to "rely on the

9    conclusion of the 602 in log no. SAC-C-09-01295."  (ECF No. 62 at 8.)

10    In addition, plaintiff contends that in appeal SAC-C-09-01295, the appeals reviewer at

11    both the second and third levels "failed to give any weight" to the information concerning

12    witnesses in the documents appended to his appeal.  (ECF No. 62 at 5.)  Plaintiff argues that the

13    reviewer chose to believe the statement that plaintiff "did not request the presence of witnesses at

14    the hearing," as set forth in the RVR decision.  (ECF No. 62 at 6.)  Plaintiff claims he sought

15    relief concerning the availability of witnesses in multiple exhausted (602) appeals filed prior to

16    and after the disciplinary hearing in appeal log no. SAC-C-09-01295, SAC-08-01731,[7] and the

17    unlogged (602) dated 6-26-09."  (ECF No. 62 at 8.)  Plaintiff contends that his claims concerning

18    witnesses were considered during the appeals process in SAC-C-09-01295.  (ECF No. 62 at 8.)

19    Finally, plaintiff alleges that his appeal rights were chilled by K. Pool's improper

20    screening out of plaintiff's June 26, 2009 appeal, the removal of a document from appeal 08-

21    01858 dated August 7, 2008, and improperly reviewed appeal SAC-09-00270, dated January 4,

22    2009, against K. Pool.  (ECF No. 62 at 10.)

23    _____

24    [6]  Plaintiff makes numerous arguments concerning the merits of his witness claims.  However, the merits of plaintiff's claims are not at issue here.  Rather, the undersigned must determine whether

25    plaintiff exhausted his administrative remedies by applying the legal standards set forth above. Thus, the undersigned does not include such arguments as they are not relevant.

26    [7]  Appeal log no. SAC-08-01731, signed on July 19, 2008, was a group appeal alleging that

27    plaintiff and other similarly situated inmates were placed into Ad Seg on July 20, 2008, without receiving a CDC 115 RVR in accordance with prison regulations.  (ECF No. 66 at 32-50.)  The

28    appeal did not raise allegations concerning witnesses, and therefore is not relevant.

1    In reply, defendant argues that plaintiff's evidence shows that his appeal rights were not

2    chilled, because plaintiff continued to pursue his claims through the third level of review;

3    plaintiff's grievance SAC-C-09-1295 did not properly exhaust his witness claims; and his other

4    appeal dated June 26, 2009, was properly screened out.  (ECF No. 68.)

5        E.  Discussion

6        Liberally construed, plaintiff's appeal SAC-C-09-01295 included a challenge concerning

7    plaintiff's ability to present witnesses at the RVR hearing.  As indicated above, the purpose of a

8    grievance "is to alert the prison to a problem and facilitate its resolution, not to lay groundwork

9    for litigation."  Griffin, 557 F.3d at 1120.  Plaintiff was not required to allege every fact later set

10   forth in his pleading, and he was not required to identify individual legal theories or defendants.

11   See Jones, 549 U.S. at 218-19.  While generally alleging a deprivation of due process would not

12   be sufficient to put prison officials on notice of plaintiff's claim concerning witnesses, plaintiff's

13   use of the terms "procedural due process rights," in connection with his claim that such rights

14   were denied by his inability to obtain statements from all of his witnesses, or that their

15   recollection had faded due to the delay in holding the RVR hearing, was sufficient to exhaust a

16   claim based on the denial of witnesses in violation of due process.  Often prison officials use

17   witness statements rather than having the witness appear in person to save time and money.  If

18   plaintiff was unable to obtain statements from his witnesses, arguably he was denied benefit of

19   such witnesses.  Thus, the court cannot find that the appeals coordinator K. Pool improperly

20   screened out the additional appeal by finding it was a "duplicate" of  appeal SAC-C-09-01295,

21   because plaintiff's claim concerning witnesses was included in appeal SAC-C-09-01295.

22       That the second level appeals reviewer chose not to interpret plaintiff's appeal in the same

23   manner is of no consequence.  Plaintiff concedes that the second level reviewer in SAC-C-09-

24   01295 specifically addressed plaintiff's allegations that he was denied access to inmate witnesses

25   during the RVR hearing, but denied plaintiff relief on "the disputed fact that plaintiff did not

26   request the presence of witnesses at the RVR hearing."  (ECF No. 62 at 17.)  The second level

27   review decision sets forth the regulations governing witnesses at RVR hearings, and the reviewer

28   stated that "the SHO noted you did not request any witnesses to be present at the hearing."  (ECF

1 No. 66 at 23.)  The inclusion of the information concerning witnesses in the second level decision

2 raises an inference that plaintiff did, indeed, discuss the screened out appeal and the issue of

3 witnesses during the second level review, and, liberally construed, would also demonstrate

4 exhaustion of plaintiff's witness claim at the second level.

5       Plaintiff argues that his second appeal was improperly screened out.  But even assuming,

6 arguendo, the appeals coordinator improperly screened out the appeal as a "duplicate," plaintiff

7 concedes he was left with an ability to pursue this claim in SAC-C-09-01295.  (ECF No. 62 at 8,

8 16.)  In addition, plaintiff's subsequent actions so demonstrate.  During the second level

9 interview, plaintiff claims in his verified opposition that he "expressed his concerns about the

10 overall denial of inmate witnesses including the fact that Defendant Lt. Sims denied [plaintiff]

11 access to his requested witnesses who were not made available during the RVR hearing."  (ECF

12 No. 62 at 16.)  Plaintiff claims that the reviewer attempted to restrict plaintiff's claim to only one

13 issue, but that plaintiff showed the reviewer a copy of the screened out appeal and the September

14 4, 2009 screening form.  Plaintiff alleges that "the interviewer made a few notations on a separate

15 piece of paper and said to plaintiff that he would take all of plaintiff's concerns under

16 submission."  (ECF No. 62 at 16.)

17       Defendant is correct that plaintiff failed to present a declaration from the second level

18 reviewer and therefore plaintiff's account of what the reviewer said in the interview is hearsay.

19       However, the undersigned does not need to resolve whether such a discussion took place,

20 or the details of such conversation, because resolution of the instant motion turns on plaintiff's

21 failure to appeal the witness issue to the third level.

22       Proper exhaustion of available remedies is mandatory, Booth, 532 U.S. at 741, and

23 "[p]roper exhaustion demands compliance with an agency's deadlines and other critical

24 procedural rules[.]"  Woodford, 548 U.S. at 90.  "The obligation to exhaust 'available' remedies

25 persists as long as some remedy remains 'available.'"  Brown, 422 F.3d at 935, citing Booth, 532

26 U.S. 731 (a prisoner must "press on to exhaust further levels of review" until he has either

27 received all "available" remedies at an intermediate level of review "or been reliably informed by

28 an administrator that no remedies are available").

1    Here, plaintiff generically states that he exhausted appeal SAC-C-09-01295 to the third

2    level.  (ECF No. 62 at 8.)  Despite plaintiff's very specific discussion about his verbal efforts with

3    the second level reviewer (ECF No. 62 at 16), plaintiff did not address his failure to present this

4    issue at the third level of appeal.  (ECF Nos. 62 & 63, passim.)

5    As set forth above, in Section H, plaintiff only appealed to the third level of review the

6    second level reviewer's decision regarding the date the DA declined to prosecute the RVR and

7    the date when the RVR hearing should have been held.  (ECF No. 59-5 at 6-7, 10-11.)  Plaintiff

8    did not include any issue regarding his inmate witnesses as part of his appeal to the third level.

9    (ECF No. 59-5 at 6-7, 10-11.)  Moreover, as defendant points out, plaintiff also failed to raise his

10   claim that the senior hearing officer was not impartial, and referred the third level reviewer back

11   to section (B) which sought relief that did not address the issue of witnesses.

12   The third level appeal form made clear that if plaintiff was dissatisfied with the second

13   level decision, he must provide the reasons for requesting a Director's Level Review.  (ECF No.

14   59-5 at 7.)  Because plaintiff appealed numerous issues, he was required to identify which issues

15   he sought to appeal to the third level.  See Brown, 422 F.3d at 941-42 (where excessive force

16   claim was being investigated, inmate was required to pursue his medical claim to the third level

17   of review).  Plaintiff provided a detailed description of the issues he was dissatisfied in a two

18   page single-spaced attachment, none of which included his claim concerning witnesses.  Finally,

19   the third level decision did not address plaintiff's witness claims.

20   Defendant provided evidence that plaintiff could have included his witness and

21   impartiality claims in his third level appeal, but failed to do so, thus meeting defendant's initial

22   burden.  Plaintiff has failed to rebut this evidence.  Accordingly, defendant is entitled to summary

23   judgment on plaintiff's sole remaining claim.

24   Finally, plaintiff failed to demonstrate that the improper screening of plaintiff's separate

25   appeal dated June 26, 2009, chilled his appeal rights.  First, plaintiff failed to demonstrate how his

26   allegations concerning events that took place in 2008 (SAC-S-08-01858) and January of 2009

27   (SAC-S-09-00270) are relevant to plaintiff's appeals filed in late June and thereafter.  Second,

28   plaintiff provided exhibits demonstrating that such events did not chill his appeal rights because

15

1  he went on to pursue such appeals through the third level of review.  (ECF No. 66 at 64-97.)

2  Third, none of the appeal reviews in these earlier appeals (ECF No. 66 at 63-64; 84-85), or in

3  SAC-C-09-1295 (ECF No. 59-5 at 7, 62; 66 at 22), were conducted by K. Pool.  Fourth, plaintiff

4  continued to pursue some of the issues in SAC-C-09-1295 through the third level of review.

5  Thus, plaintiff failed to show his appeal rights were chilled.

6  III.  <u>Recommendations</u>

7       Accordingly, IT IS HEREBY RECOMMENDED that defendant's motion for summary

8  judgment on plaintiff's sole remaining claim (ECF No. 59) be granted.

9       These findings and recommendations are submitted to the United States District Judge

10  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

11  after being served with these findings and recommendations, any party may file written

12  objections with the court and serve a copy on all parties.  Such a document should be captioned

13  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

14  objections shall be served and filed within fourteen days after service of the objections.  The

15  parties are advised that failure to file objections within the specified time may waive the right to

16  appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

17  Dated:  November 25, 2014

18

19  /pent3319.msj.fte

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

16